**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000002
25-NOV-2024
07:59 AM
Dkt. 148 SO**

NO. CAAP-21-0000002

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

C.R.F., Plaintiff-Appellant,
v.
M.L.M.F., Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D No. 16-1-0645)

SUMMARY DISPOSITION ORDER
(By: Wadsworth, Presiding Judge, Nakasone and McCullen, JJ.)

This appeal concerns post-divorce decree determinations of property division and spousal support. We affirm.

Plaintiff-Appellant CRF (**Husband**) appeals from the October 30, 2020 Decision and Order Regarding Reserved Issues (**Decision**); the December 7, 2020 Order Denying [Husband]'s and [Defendant-Appellee MLMF (**Wife**)]'s Motions for Reconsideration

(**Reconsideration Order**);[1] and the June 8, 2021 Findings of Fact and Conclusions of Law (**FOFs/COLs**) entered by the Family Court of the First Circuit (**Family Court**).[2]

Following a 2019 trial on Husband's 2016 divorce complaint against Wife, the Family Court entered a February 3, 2020 Divorce Decree, which granted Husband a divorce; awarded joint legal and physical custody of the parties' three children; and reserved all other issues for further adjudication. The October 30, 2020 Decision resolved the reserved issues and made determinations relevant to this appeal regarding property division, marital waste, and spousal support.

On appeal, Husband contends that the Family Court "erred as a matter of law and/or abused its discretion" by: **(1)** "declin[ing] to value millions of dollars worth of marital assets in the Philippines" (**Philippines Assets**),[3] awarding these assets to Wife "without offset to Husband, and requir[ing] Husband to pay half of the debts on those assets"; **(2)** finding that "all funds transferred to Husband's irrevocable trusts created for the parties' three children, before and after [the date of final separation in contemplation of divorce (**DOFSICOD**)], constituted waste"; and **(3)** awarding Wife $240,000 in alimony, or spousal support of $5,000 per month for four

---

[1]    Husband makes no argument regarding the Reconsideration Order, and we do not address it. See Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7).

[2]    The Honorable John C. Bryant, Jr. presided.

[3]    The unchallenged FOFs indicate that the Philippines Assets consist of a corporation in Wife's name, called 88 Infinite Diamond, which owns a five-story office building and three restaurant franchises in the Philippines; the parties' debt-free farmland in the Philippines (**Farmland**); and the parties' custom-built residence, where Wife lives while in the Philippines (**Beverly Place**). The parties also own other residential properties in Hawai'i and the Philippines not at issue in this appeal.

years, "based on the disparity in the parties' incomes at [the date of conclusion of the evidentiary part of the trial (**DOCOEPOT**)][,]" "despite finding Wife's evidence regarding income and expenses not credible," and without "determining []either her needs []or Husband's ability to pay[.]"[4]

Wife did not file an Answering Brief. Husband filed an October 7, 2021 "Motion for Order, in the Absence of an Answering Brief, Accepting as True the Statement of Facts in [Husband]'s Opening Brief" (**Motion Regarding No Answering Brief**), which we deny.

Upon careful review of the record and the Opening Brief submitted by Husband, and having given due consideration to the arguments advanced and the issues raised, we resolve Husband's points of error as follows, and affirm.

**(1)** Husband argues that the Family Court erred by listing the values of the Philippines Assets as "unknown" on the property division chart (**PDC**); listing $937,000 in loans for these assets as Category 5 marital debts; and "requir[ing] Husband to pay half." Husband claims the Decision effectively "gifted" the Philippines Assets to Wife "absent any credible value," and contends the Family Court "should have divided the

---

[4] We have numbered Husband's three points of error (**POEs**). See HRAP Rule 28(b)(4) (requiring POEs be "set forth in separately numbered paragraphs").

In the POEs, Husband challenges 15 FOFs and 10 COLs. With the exception of FOFs 12, 15, 18, 22 and 23, and COLs 5, 6, 15 and 17, he presents no specific argument as to why any of the other challenged FOFs or COLs are clearly erroneous or wrong. "This court is not obliged to address matters for which the appellant[] ha[s] failed to present discernible arguments." Hussey v. Say, 139 Hawaiʻi 181, 191, 384 P.3d 1282, 1292 (2016) (quoting Exotics Hawaiʻi-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawaiʻi 277, 288, 172 P.3d 1021, 1032 (2007)); see HRAP Rule 28(b)(7) (requiring argument on the contentions raised in the POEs with citations to legal authorities and parts of the record relied on). We do not address the summarily challenged FOFs/COLs. See id.

assets between the parties, or ordered them sold and the proceeds divided."  Husband argues the Family Court cannot "determine property division based on 'the best interests of the parties and the children[,]'" and the Family Court "d[id] not explain" its decision as "Wife's concealment of her earnings, appraisals and purchase prices resulted in 'marital property that is not valued' in the court's [PDC]."

"Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." Kakinami v. Kakinami, 127 Hawai'i 126, 136, 276 P.3d 695, 705 (2012) (citation omitted).  "Under [Hawai'i Revised Statutes (**HRS)**] § 580-47, the family court has wide discretion to divide marital property according to what is just and equitable." Collins v. Wassell, 133 Hawai'i 34, 42, 323 P.3d 1216, 1224 (2014) (cleaned up).

While "competent evidence of value must support the family court's division of property[,]" Baker v. Bielski, 124 Hawai'i 455, 468, 248 P.3d 221, 234 (App. 2011) (citation omitted), "a party's failure to provide the court with evidence of market value leaves the court discretion to review the full record to determine an equitable value." Id.  "[W]hen a party offers no evidence of an asset's value, the party cannot complain about a court's disposition of the asset." Id. (citing Booth v. Booth, 90 Hawai'i 413, 416, 978 P.2d 851, 854 (1999)).

The record reflects that Husband listed the Philippines Assets' values as "Unknown" in his October 21, 2019 Closing Argument (**Closing Argument**).  Husband's Closing Argument included a proposed property division chart (**Husband's PDC**) that listed "Unknown" for the values of 88 Infinite Diamond, Beverly Place, and the Farmland; and listed "Unknown" for the values of

the loans for 88 Infinite Diamond (**loans for 88 Infinite Diamond**), which Husband proposed be assigned to Wife in their entirety.  Regarding the loans for 88 Infinite Diamond, Husband's PDC contained two notations (Note 1 and Note 7) that stated:  "[Wife] owns 88 Infinite Diamond . . . which has a 5-story commercial building and 2 award-winning franchises[,]" and "[t]he corporate debts against the commercial building should be paid by [88 Infinite Diamond], which is awarded to [Wife]." Husband's PDC identified the five creditors for the loans for 88 Infinite Diamond, as follows:  "Bank of Philippines," "China Bank Savings," "Bank of Philippine Islands," "Bank of Commerce," and "BPI (Phil)," all with "Unknown" amounts.  Husband acknowledges on appeal that he did not value Beverly Place in his proposed PDC because he "asked [that] the Beverly Place residence be sold and the proceeds divided equally."  With respect to Beverly Place and the Farmland, Note 2 on Husband's PDC contained an acknowledgment that:  "[n]one of the properties were valued.  It does not matter because they must be sold to pay the Japanese tax debt."[5]

In its Decision, the Family Court did not order the sale of the Philippines Assets as requested in Husband's Closing Argument and Husband's PDC, but the Family Court adopted the "Unknown" property values for the Philippines Assets as set forth in Husband's submissions.  The Family Court's PDC determined values for the five loans for 88 Infinite Diamond; identified 88 Infinite Diamond's creditors as the same five names set forth in Husband's PDC; and assigned all of these debts to Wife.  Husband's assertion that the court required him to pay half of these debts is unsupported and incorrect.  The

_____

[5]     The Decision classified the $2,769,605 tax debt to the government of Japan as joint marital debt.

court listed these debts as Wife's in the PDC and ruled that there would be no equalization payment in these circumstances.

On this record, Husband cannot complain about the Family Court's disposition of the Philippines Assets when Husband's Closing Argument stated "there was no proof offered by either party about values of known assets," and where Husband's PDC submitted "Unknown" values for each of the Philippines Assets. See Baker, 124 Hawai'i at 468, 248 P.3d at 234 ("In the instant case, Bielski provided no evidence of the Burnet Property's value and so is precluded from complaining about its disposition."). In any event, the Family Court's property division was within its "wide discretion to divide marital property according to what is 'just and equitable'" "guided by reason and conscience to attain a just result." Wassel, 133 Hawai'i at 42, 323 P.3d at 1224 (cleaned up). Under the circumstances here, we conclude the Family Court did not abuse its discretion in awarding Wife the Philippines Assets with "Unknown" values, along with the corresponding loans for 88 Infinite Diamond, as set forth in Husband's Closing Argument. FOFs 12, 15, 18, 22 and 23 were not clearly erroneous. See Kakinami, 127 Hawai'i at 136, 276 P.3d at 705. COLs 5, 6, 15 and 17 were not wrong, and were not clearly erroneous to the extent they were mixed FOF and COL. See Est. of Klink ex rel. Klink v. State, 113 Hawai'i 332, 351, 152 P.3d 504, 523 (2007).

**(2)** Husband argues the Family Court erred in concluding that Husband "wasted approximately $3.7 million by his transfers of marital assets into the children's trusts," which were established for each of the three children between 2007 and 2012, because the Family Court does not indicate what "portion" "was transferred into the trusts *after June 2013*[,]" or DOFSICOD.

6

"Waste of marital assets is chargeable to a divorcing party when, during the time of the divorce, a party's action or inaction caused a reduction of the dollar value of the marital estate under such circumstances that he or she equitably should be charged with having received the dollar value of the reduction."  Chen v. Hoeflinger, 127 Hawaiʻi 346, 358, 279 P.3d 11, 23 (App. 2012) (cleaned up).

Here, Husband fails to identify what specific amounts of the $3.7 million in marital waste were transferred to the children's trusts before DOFSICOD on June 13, 2013, and incorrectly deemed marital waste.  FOF 47, which Husband does not challenge and is binding on appeal, states that Husband "transferred, in real properties, cash and membership unit transfers, $3,732,949 into the Children's three trusts."  The Decision explained that Husband's transfers of $3,732,949 occurred after DOFSICOD in June 2013:

> While the trusts were established prior to the date of separation, the transfer of marital funds and assets into the trusts occurred post-separation.  The Court has no question that as of June 2013, [Husband] had no plans on reconciliation.  The Court finds that these transfers have reduced the marital estate and the Court further finds it equitable and fair that [Husband] be charged with these reductions. . . .
>
> . . . It seems clear to the Court that when $3.7+ million is taken from the marital estate, that estate is reduced by at least that amount.

The Family Court's determination of marital waste of $3.7 million was not clearly erroneous and was supported by substantial evidence of transfers to the children's trusts after the June 2013 DOFSICOD.  See Chen, 127 Hawaiʻi at 358, 279 P.3d at 23.  Husband testified that each child's trust contained "some cash[,]" "33 percent interest in [Prospect Absolute Return Japan LLC (**PARJ LLC**)] in each of [the three] accounts totaling 99 percent," and each child's trust had "a starter condo in

7

Honolulu" worth "less than half [a] million dollars" or "less than $400,000." The record reflects Husband's 2017 transfer of a Kapahulu Avenue condo with tax-assessed value of $429,200 into the eldest child's trust; the middle child's trust contained a condo, but the date of the condo's transfer into the trust was unclear; and Husband's 2014 transfer of a Leahi Avenue condo with tax-assessed value of $459,600 into the youngest child's trust. Husband transferred PARJ LLC shares to the children's trusts in 2014 and 2015, worth $1,412,112 and $287,267, respectively. These post-DOFSICOD transfers of PARJ LLC shares to the children's trusts resulted in each trust receiving 33 percent ownership, and Husband retaining 1 percent. Husband testified that "[t]he kids own 99 percent of PARJ LLC, which has the one asset, Park Lane." Husband testified that PARJ LLC purchased the residential unit at Park Lane where Husband lived, for $3.75 million; and the record contains evidence that this occurred in 2017. Husband also made $453,500 in cash contributions to the children's trusts from 2014 to 2018.

In light of the above transfers <u>after</u> the June 13, 2013 DOFSICOD, the Family Court's $3.7 million amount may be a conservative figure of marital waste. Husband did not identify what specific amounts within the Family Court's $3.7 million determination were transferred to the children's trusts <u>before</u> DOFSICOD. We conclude the Family Court did not clearly err in determining marital waste in this amount. <u>See</u> <u>Est. of Klink ex rel. Klink</u>, 113 Hawai'i at 351, 152 P.3d at 523.

**(3)** Regarding spousal support, Husband argues the Family Court did not determine Wife's expenses, "her demonstrated needs[,]" Husband's ability to pay, or Wife's need to maintain the standard of living during the marriage.

The record reflects that during the marriage, the parties enjoyed an affluent lifestyle based on Husband's earnings, and Wife was a homemaker. For purposes of spousal support, the Family Court found that Husband's income at trial was $51,000 per month; and Husband's claim of a $25,098 monthly income deficiency was not credible "bear[ing] little resemblance to his actual financial situation." The Family Court's Decision noted that since the parties' separation, Husband was currently "living in a multi-million dollar luxury condominium" and was "driving a Porsche"; Husband had "donated hundreds of thousands of dollars" to various schools; and Husband "travel[ed] extensively." Husband testified that he paid $13,000 in monthly rent to PARJ LLC for the Park Lane unit where he resided. At the close of trial in July 2020, Wife testified that she and 88 Infinite Diamond's restaurant franchises experienced financial distress due to the impacts of COVID-19. The Family Court found Wife's monthly income was $17,000. The Decision found: "There is no question that [Husband]'s current standard of living is higher than [Wife]'s." We conclude that the Family Court did not abuse its discretion in awarding spousal support of $5,000 per month for four years, and determining that this award was "just and equitable" under the circumstances. See HRS § 580-47(a); Wong v. Wong, 87 Hawaiʻi 475, 485, 960 P.2d 145, 155 (App. 1998); Hamilton v. Hamilton, 138 Hawaiʻi 185, 209, 378 P.3d 901, 925 (2016); Kakinami, 127 Hawaiʻi at 136, 276 P.3d at 705.

For the foregoing reasons, we affirm the October 30, 2020 Decision and Order Regarding Reserved Issues; the December 7, 2020 Order Denying Plaintiff's and Defendant's Motions for Reconsideration; and the June 8, 2021 Findings of Fact and Conclusions of Law, all entered by the Family Court of the First Circuit.

It is further ordered that the October 7, 2021 Motion Regarding No Answering Brief is denied.

DATED:  Honolulu, Hawaiʻi, November 25, 2024.

On the briefs:

Peter Van Name Esser,
for Plaintiff-Appellant.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge